ABRAHAM W. STERNBERG, Respondent, *v.* BELLANCA AIRCRAFT CORPORATION, Appellant.

First Department, May 17, 1940.

*Andrew Bellanca,* for the appellant.

*Joseph L. Greenberg,* for the respondent.

DORE, J.   Defendant appeals from an order denying its motion for summary judgment.   Plaintiff sues for $15,000 as broker's commissions claimed to be due because plaintiff in 1936 introduced defendant to a firm named Tobey & Company which at that time refused to deal either with plaintiff or defendant, but later in 1938 made with defendant an underwriting agreement procured by a person other than plaintiff.   Defendant contends that under the agreement sued on and on the undisputed facts plaintiff cannot recover.   Plaintiff contends there are issues of fact that must await trial.

Plaintiff alleges the original engagement was of himself and one Charles R. Sickels, who has assigned all his rights to plaintiff, and both will be referred to herein as " plaintiff."

While plaintiff's bill of particulars alleges the agreement was written and oral, plaintiff, for the terms of the agreement, wholly relies on two letters dated September 4 and September 8, 1936, written to plaintiff by one Frank Bellanca.   Defendant denies the authority of Frank Bellanca to act for it, and plaintiff's verified bill of particulars refers to oral conversations with Giuseppe Bellanca, defendant's president acting for defendant, as " confirming contents of written letters of September 4th and 8th, 1936."   For the purpose of this appeal we must assume the authority of Frank Bellanca to act for defendant, and with that assumption in plaintiff's favor the reciprocal rights and duties of the parties can be determined as a matter of law by the written agreement on which plaintiff relies.   In the light of the terms of that agreement and on the undisputed facts in the record, we think plaintiff may not recover and that summary judgment dismissing the complaint should have been granted.

In 1936 defendant corporation required additional financing and plaintiff with others sought the right to find sources of such financing; plaintiff to receive in compensation therefor so-called " finder's commissions."   The letter of September 4, 1936, after acknowledging receipt of plaintiff's references, expressly states that defendant did not bind itself to give plaintiff an exclusive right to bring about the financing; that efforts were being made by others, and defendant held itself open to receiving offers without binding itself to act; and that should defendant " deem it at any time advisable to act upon an offer or plan coming from a source other than " plaintiff, defendant " will be in no way obligated for commissions or otherwise to " plaintiff.   The letter then proceeded to state, and it is on this that plaintiff relies for recovery: " With respect to commissions, we believe that we correctly state our understanding as follows: Should we in the exercise of our

own discretion and judgment consummate the refinancing and reorganization of our Company through a source made available through [plaintiff, then plaintiff] shall be entitled to receive after the consummation of such refinancing and reorganization, finders' commissions at the following rates * * *." Then follow agreed percentages of the sums produced. Plaintiff is then told that it is defendant's desire to obtain refinancing " at the earliest possible date," and the letter concludes: " Consequently, we do not wish anything in this letter to bear the construction that we remain open for any length of time for proposals; it is simply a matter of our finding an acceptable proposal at the first opportunity from whatever source it may come."

In the letter of September 8, 1936, defendant again stated " the question of ' time ' is paramount if you want to be favored against the other propositions we have been negotiating in the last few weeks."

On this record for the purpose of this appeal we take it as established that in September, 1936, plaintiff arranged a meeting between the officers of defendant and a copartnership named Tobey & Company, members of the New York Stock Exchange, and negotiations were had in September, 1936, with that firm with reference to raising additional capital for defendant. It is also undisputed that at that time Tobey & Company because of defendant's then unfavorable financial position, definitely stated it was not interested in underwriting defendant's stock, and plaintiff concedes that " no business was done at that time between Tobey & Co. and the defendant."

It is also not disputed that after Tobey & Company refused to negotiate with either plaintiff or defendant in 1936, defendant in January, 1937, was able to arrange through one Sherover an underwriting agreement with a firm named Thomas & Griffith. That agreement is a matter of public record, having been filed with the Securities and Exchange Commission pursuant to the Securities Act of 1933. However, as Thomas & Griffith failed to take down the stock on the agreed date, that firm was held by defendant in default.

After the expiration of the Thomas & Griffith underwriting agreement, defendant's finances improved materially and it is not denied that in July or August, 1938, defendant entered into negotiations with Tobey & Company through the said Mr. Sherover and concluded an underwriting agreement with that firm on November 18, 1938. Plaintiff in his answering affidavit admits that he did not participate or have any part in negotiating and bringing about the agreement of November 18, 1938, between defendant and

Tobey & Company, but he relies on his introduction of defendant to that company in 1936. He admits that "in August of 1938 another person brought Mr. Bellanca back again to Tobey & Co.," but he insists that this fact is unimportant as is the fact that no business was done between Tobey & Company and defendant in 1936. Plaintiff relies on the language of the letter of September 4, 1936, namely, that if defendant did "consummate the refinancing * * * through a source made available through" plaintiff, plaintiff was entitled to finder's commissions; and in his affidavit plaintiff sets forth his whole claim in the following words: "I had made the introduction of Mr. Bellanca to Tobey & Co. as a source through whom additional financing could be obtained and my cause of action is based upon this introduction as a source made available by me to the defendant for the sale of its corporate stock."

We think that the express terms of the agreement on which plaintiff relies bar recovery. In the letters relied on plaintiff's privilege to act as broker was expressly a limited one. Plaintiff was told that time was of the essence, and that defendant would not remain open "for any length of time for proposals" from plaintiff. Concededly plaintiff's introduction of Tobey & Company in 1936 did not make available a source of refinancing as Tobey & Company at that time refused to negotiate either with plaintiff or defendant. Under the express terms of the agreement relied on plaintiff was informed that if defendant deemed it "at any time advisable to act upon an offer or plan coming from a source other than" plaintiff, defendant would be "in no way obligated for commissions" to plaintiff; and the record indisputably establishes that after plaintiff's failure to procure a plan or underwriting agreement from Tobey & Company in 1936, defendant deemed it advisable to act upon an offer or plan coming from another source and actually made an underwriting agreement with Thomas & Griffith in 1937. Under the terms of plaintiff's agreement he was accordingly not entitled to commissions. The refinancing that was consummated by defendant with Tobey & Company was concededly arranged two years after plaintiff's failure to procure such refinancing and through an entirely different source than plaintiff. Were there no expressed mention of the fact that time is of the essence, it could not be said that two years was a reasonable time. In view of the expressed terms of the agreement that time was of the essence, it must be held as a matter of law that the lapse of two years would be an unreasonable time.

Plaintiff had no connection whatever with the financing agreement made between defendant and Tobey & Company in 1938. He created no interest in Tobey & Company when he introduced

the firm in 1936, and procured no offer or plan of refinancing. His right to act on behalf of defendant was ended by the terms of his own contract when defendant made another underwriting agreement with Thomas & Griffith in 1937, a source not made available by plaintiff. Plaintiff had nothing to do with the negotiations instituted by Sherover with Tobey & Company in the fall of 1938, or with the resulting underwriting agreement of November, 1938.

On plaintiff's contention, by merely showing that he introduced defendant to Tobey & Company in 1936 and that nothing came at the time from such introduction, defendant would be forever barred from dealing with Tobey & Company through the intervention of any one else without paying plaintiff a commission on any agreement reached at any time in the future with that firm through any other intermediary. The case of *Seckendorff* v. *Halsey, Stuart & Co., Inc.* (234 App. Div. 61, 70; revd., 259 N. Y. 353), is not an authority for plaintiff's contention. There the Court of Appeals held there was sufficient evidence to support a conclusion that the ultimate financing essentially resulted within a reasonable time from plaintiff's act and that tracing the connection between the plaintiff's introduction and the terms of the transaction " was for the jury's consideration." That case is clearly distinguishable by the terms of the contract relied on herein. The contract is complete and unambiguous. The record establishes that plaintiff's right to act was terminated by defendant arranging the underwriting with Thomas & Griffith. We conclude that there are no triable issues and that defendant's motion for summary judgment should have been granted.

The order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion granted.

MARTIN, P. J., and CALLAHAN, J., concur; UNTERMYER and COHN, JJ., dissent.

Order reversed, with twenty dollars costs and disbursements, and motion granted.